**ULICO CASUALTY COMPANY,**
Appellant/Appellee,

v.

**ALLIED PILOTS ASSOCIATION,**
Appellee/Appellant.

No. 2–04–120–CV.

Court of Appeals of Texas,
Fort Worth.

Dec. 15, 2005.

Rehearing Overruled Feb. 9, 2006.

Figari & Davenport, L.L.P., Don Colleluori, Jonathan G. Erwin, Dallas, Shaw Pittman, L.L.P., Ruth Kochenderfer, McLean, VA, for appellant/appellee.

Kirkley & Berryman, L.L.P., J. Lyndell Kirkley, B. Dan Berryman, R. David Broiles, Fort Worth, for appellee/appellant.

PANEL A: LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

This case arises out of a dispute over insurance coverage for defense costs under a claims-made policy. In two issues, appellant Ulico Casualty Company contends that it cannot be liable for appellee Allied Pilots Association's (the Association) defense costs because waiver and estoppel cannot create coverage for the Associa-

tion's late-reported claim. Ulico also claims that the trial court erred by vacating the jury's damages award and entering judgment for almost double the amount of the jury's award. The Association brings three cross-issues, all contending that it is entitled to attorney's fees in its breach of contract suit against Ulico. Because we conclude that waiver and estoppel apply in this instance and that the Association proved its damages as a matter of law, we affirm the trial court's judgment as to liability and damages. However, because we also hold that the Association is entitled to attorney's fees under Texas Civil Practice and Remedies Code section 38.001(8), we remand as to the Association's request for attorney's fees. TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 1997).

## I. Background Facts

On October 4, 1999, the Association, the collective bargaining representative for the pilots of American Airlines, was served in a suit alleging that it breached its duty of fair representation to a class of Reno Air pilots who were hired by American Airlines (the *Allen* suit). At the time, the Association was covered by a Union Liability Insurance Policy[1] issued by Ulico. The expiration date of the policy had been extended twice by endorsement, first to September 25, 1999 and then to October 25, 1999.[2] The policy required Ulico to pay

all **Loss** which [the Association] shall become legally obligated to pay on account of *any claim made* against [the Association] during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by [the Association] before or during the **Policy Period,** *and reported* to [Ulico] . . . during the **Policy Period** or the Extended Reporting Period, if elected. [Emphasis added.]

The policy defined "Loss" to include defense costs. The policy further provided that "as a condition precedent to [the Association's] rights under [the] policy," the Association was required to "give [Ulico] written notice *during the Policy Period or the Extended Reporting Period, if elected,* of any claim made against any of them [the insureds] for a **Wrongful Act**." [Emphasis added.][3]

The *Allen* suit was served on the Association before the October 25, 1999 expiration date of the Ulico policy, but the Association did not send notice of the suit to Ulico until November 5, 1999, after the policy had expired. Upon receiving the claim, Ulico assigned it to Sheila Bowers, a senior claims analyst for Ulico, on December 8, 1999. On March 1, 2000, Bowers sent a coverage letter to Steve Hoffman, the Association's counsel,[4] which specifical-

---

1. This policy generally provided errors and omissions coverage for acts arising out of the Association's activities as a union, including coverage for the breach of its duty of fair representation.

2. The Association did not renew the Ulico policy after the October 25, 1999 expiration date; instead, it purchased a new policy from Legion Insurance Company.

3. In contrast to an occurrence-based policy, a claims-made policy provides coverage only for claims that come to the attention of the insured *and* that are made known to the insurer during the policy period. *Pilgrim Enters. Inc. v. Md. Cas. Co.,* 24 S.W.3d 488, 497 (Tex.App.-Houston [1st Dist.] 2000, no pet.); *Yancey v. Floyd West & Co.,* 755 S.W.2d 914, 918 (Tex.App.-Fort Worth 1988, writ denied).

4. Hoffman had represented the Association since the inception of his law firm, and his law firm was the Association's "outside general counsel."

ly stated that "[i]n the context of this litigation Defense Costs are afforded to" the Association. The letter globally reserved the right to contest coverage under sections VA(6) and VA(9) of the policy and also concluded with the following:

Ulico ... expressly reserves all rights under the policy and available at law to deny coverage and/or rescind the policy on additional alternative bases as other terms, conditions, exclusions, endorsements and provisions of the policy, including representations, statements, declarations and/or omissions in connection with the application therefore, are found to be applicable.

The letter did not specifically reserve the right to contest coverage if it was determined that the Association's claim was filed outside the policy's reporting period. With the letter, Bowers enclosed Ulico's Litigation Management Guidelines, a defense attorney evaluation form, and an attorney time forecast and asked the Association's counsel to complete and return them within thirty days, along with his billing rates. Hoffman did not respond to Bowers's request at that time, but he did bill the Association monthly for his work on the *Allen* suit, and the Association paid the bills.

Bowers and Hoffman did not have any further contact until April 25, 2001, when Bowers sent an additional letter to Hoffman's partner, Edgar James, stating that "[p]ursuant to my March 1, 2000 reservation of rights letter, Ulico has agreed to reimburse [the Association] for reasonable and necessary defense expenses." This letter contained no reservation of rights language. Bowers enclosed the same forms she had forwarded in March 2000 and asked that they be completed within two weeks. Hoffman responded on May 3, 2001. At that time, his firm had incurred approximately $635,000 in defense costs on

the *Allen* suit, all of which had been paid by the Association.

On September 14, 2001, the trial court in the *Allen* suit granted summary judgment in the Association's favor. The plaintiffs in that case filed an appeal, but they later dismissed it. Thus, the only "Loss" that the Association suffered in connection with the *Allen* suit was the defense expenses that it paid to Hoffman and others.

Bowers did not realize that the Association had not timely reported its claim during the policy period as required by sections III.A and VIII of the policy until after she received copies of Hoffman's invoices for legal fees and expenses. Ulico never informed the Association about the mistake. Instead, on November 28, 2001, Ulico brought this declaratory judgment action against the Association, asking the trial court to determine that it did not owe defense costs to the Association under the policy because the Association did not timely report its claim. The Association counterclaimed, contending that Ulico breached its obligation to pay defense costs under the policy. The trial court realigned the parties for trial.

Upon conclusion of the trial, Ulico moved for a directed verdict on all of the Association's claims, which the trial court denied. The jury found that Ulico had provided the Association an extended reporting period under the policy, that Ulico had agreed, separate and apart from the policy, to cover the Association's defense costs in the *Allen* suit, and that Ulico had waived its right to assert, and was estopped from asserting, that the policy did not cover the Association's claim for defense costs. The jury awarded the Association $308,235 in damages.

Ulico filed a motion for judgment notwithstanding the verdict (JNOV), asking that the trial court set aside the jury's verdict on liability and damages. The As-

sociation moved for judgment on the verdict as to Ulico's liability and JNOV as to the jury's damages award, requesting that the trial court vacate the award and award damages of $616,468.55 instead. The trial court granted Ulico's motion as to the jury's findings that Ulico had provided the Association an extended reporting period under the policy and that Ulico had agreed, separate and apart from the policy, to cover the Association's defense costs in the *Allen* suit. But it denied the motion as to the jury's findings that Ulico had waived its right to assert, and was estopped from asserting, that its policy did not cover the Association's defense costs in the *Allen* suit. The trial court therefore granted the Association's motion for judgment on the verdict as to the waiver and estoppel theory of liability. The trial court also granted the Association's motion for JNOV, vacated the jury's damage award, and awarded the Association damages of $616,468.55 instead.

## II. Summary of Ulico's Issues

In its first issue, Ulico contends that the trial court erred by denying its motions for directed verdict and JNOV requesting that the trial court set aside the jury's findings that Ulico waived and was estopped from denying coverage for the Association's defense costs because the doctrines of waiver and estoppel cannot be used to create coverage where none exists and no exception to this general rule applies. In its second issue, Ulico claims that the trial court erred by granting JNOV as to the jury's damages finding.

## III. Standard of Review

■ A directed verdict is proper only under limited circumstances: (1) when the evidence conclusively establishes the right of the movant to judgment or negates the right of the opponent; or (2) when the evidence is insufficient to raise a material fact issue. *Prudential Ins. Co. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 76–77 (Tex.2000); *Ray v. McFarland*, 97 S.W.3d 728, 730 (Tex.App.-Fort Worth 2003, no pet.).

■ A trial court may disregard a jury verdict and render judgment notwithstanding the verdict ("JNOV") if no evidence supports the jury findings on issues necessary to liability or if a directed verdict would have been proper. *See* TEX.R. CIV. P. 301; *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex.2003); *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex.1991). Thus, the propriety of a JNOV is determined under the no-evidence standard as well.

■ A legal sufficiency challenge may only be sustained when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex.1998), *cert. denied*, 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could, and disregard evidence contrary to the finding unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005).

■ Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Caza-*

*rez,* 937 S.W.2d 444, 450 (Tex.1996); *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex. 1996). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.,* 77 S.W.3d 253, 262 (Tex.2002).

## IV. Ulico's Liability Under Waiver and Estoppel Theories

■■■■ In a proper case, estoppel can prevent an insurer from asserting policy defenses. *Employers Cas. Co. v. Tilley,* 496 S.W.2d 552, 560 (Tex.1973); *Tull v. Chubb Group of Ins. Cos.,* 146 S.W.3d 689, 694 (Tex.App.-Amarillo 2004, no pet.). This can occur when an insurer undertakes defense of a case without qualification or reservation of the right to later deny its obligation to provide indemnity if its insured is found liable. *See Am. Indem. Co. v. Fellbaum,* 114 Tex. 127, 263 S.W. 908, 909–10 (Tex.1924); *Tull,* 146 S.W.3d at 694; *Farmers Tex. County Mut. Ins. Co.*

*v. Wilkinson,* 601 S.W.2d 520, 522 (Tex. Civ.App.-Austin 1980, writ ref'd n.r.e.). Generally, estoppel cannot be used to create insurance coverage when none exists under the policy. *Tex. Farmers Ins. Co. v. McGuire,* 744 S.W.2d 601, 602–03 (Tex. 1988); *Tull,* 146 S.W.3d at 694. An exception to this general rule—commonly called the *Wilkinson* exception—provides that an insurer undertaking or continuing defense of a claim while having knowledge of facts indicating the claim is not covered under its policy, without an effective reservation of rights, may waive or be estopped from asserting all policy defenses, including the defense of noncoverage. *See, e.g., Tull,* 146 S.W.3d at 694; *see also Wilkinson,* 601 S.W.2d at 521–22. This exception is based on the assumption of the defense of the underlying suit by the insurer and the resulting actual or potential conflict of interest arising when an insurer represents the insured in a suit against the insured and simultaneously formulates its defense against the insured for noncoverage. *See Tull,* 146 S.W.3d at 694–95; *Wilkinson,* 601 S.W.2d at 522. Although the Texas Supreme Court has never addressed this exception,[5] it has been utilized, recognized, or both by several Texas courts of appeals[6] and federal courts applying Texas law.[7] *See Tull,* 146 S.W.3d at 694.

---

5. The supreme court has cited *Wilkinson,* but only in the context of explaining that a court of appeals had adopted an exception to the general rule that coverage cannot be created by waiver or estoppel. *McGuire,* 744 S.W.2d at 603 n. 1. The court did not address the *Wilkinson* exception in *McGuire* because it was not "outcome-determinative." *Id.*

6. *E.g., Katerndahl v. State Farm Fire & Cas. Co.,* 961 S.W.2d 518, 523 (Tex.App.-San Antonio 1997, no writ); *State Farm Lloyds, Inc. v. Williams,* 960 S.W.2d 781, 785–86 (Tex.App.-Dallas 1997, pet. dism'd by agr.); *Paradigm Ins. Co. v. Tex. Richmond Corp.,* 942 S.W.2d 645, 652 (Tex.App.-Houston [14th Dist.] 1997, writ denied) (op. on reh'g); *Am. Eagle Ins.*

*Co. v. Nettleton,* 932 S.W.2d 169, 173 (Tex. App.-El Paso 1996, writ denied); *J.E.M. v. Fidelity & Cas. Co. of N.Y.,* 928 S.W.2d 668, 672 (Tex.App.-Houston [1st Dist.] 1996, no writ); *Rodriquez v. Tex. Farmers Ins. Co.,* 903 S.W.2d 499, 510 (Tex.App.-Amarillo 1995, writ denied); *State Farm Lloyds v. Williams,* 791 S.W.2d 542, 551 (Tex.App.-Dallas 1990, writ denied).

7. *See Penn. Nat'l Mut. Cas. Ins. Co. v. Kitty Hawk Airways, Inc.,* 964 F.2d 478, 481 (5th Cir.1992); *Nutmeg Ins. Co. v. Clear Lake City Water Auth.,* 229 F.Supp.2d 668, 676–77 (S.D.Tex.2002); *see also Arkwright–Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.,* 932 F.2d 442, 444–45 (5th Cir.1991) (relying on

Here, Ulico argues that we should not analyze this issue under the *Wilkinson* exception because this court has never addressed it, and, further, that even if we adopt the *Wilkinson* exception, the Association brought forward no evidence that it is applicable. It is true that both the supreme court and this court have never addressed the *Wilkinson* exception, but that does not preclude us from applying it to this case. It has been employed by courts of appeals in this State, as well as federal courts in the Fifth Circuit applying Texas law, for over twenty years [8] and is described as a "well-established" exception [9] to our general rules against estoppel and waiver creating coverage. In addition, we believe the reasoning upon which the exception is based to be sound; thus, we will analyze the estoppel and waiver issue in this case in the context of the *Wilkinson* exception.

## A. Whether Ulico Undertook or Continued a Defense of the Association's Claim

■ Ulico contends that there is no evidence it undertook or assumed the defense of the *Allen* suit against the Association because (a) the Association hired its own counsel, (b) "Ulico did not direct or control the defense of" the *Allen* suit, and (c) "Ulico did not make or assist the [Association] or its counsel in making any substantive or procedural decisions in defense of" the *Allen* suit. It contends that "[a]ctual control of the defense is necessary" because "the sole reason the *Wilkinson* exception has been recognized . . . is to prevent insurers from being able to use the counsel they select to work against their policyholders by exploiting a conflict of interest."

The evidence shows that on December 10, 1999, Bowers wrote the Association to acknowledge its filing of the claim. In that letter, she informed the Association that "pursuant to Policy Section VII. paragraph 2, 'No defense fees, costs, charges or expenses may be incurred or settlements made without [Ulico's] prior written consent'." Hoffman responded to her letter on December 17, 1999, on behalf of the Association. In that letter, he told Bowers that because the defense of the *Allen* suit must be in accordance with the federal rules of procedure and the directives of the trial court, it would not always be possible to get Ulico's written consent prior to taking action and incurring defense costs. The only response Hoffman received was Bowers's March 2000 and April 2001 letters, in which she stated that the policy covered defense costs in the action and with which she enclosed litigation guidelines and attorney forms, requested that Hoffman complete the forms, and requested that Hoffman advise her on the defense strategy.

The policy was issued with an endorsement, entitled Defense and Settlement, which added the following to the policy, in pertinent part:

> Authority is hereby granted to [the Association] to select counsel. [Ulico] reserves the right to veto any selection. The consent by [Ulico] shall not be unreasonably withheld. If [the Association] fails to make its selection known to [Ulico] within a reasonable period, [Ulico] shall provide the defense.
>
> . . . .
>
> [Ulico] shall advise the Insureds in writing of its intent to withdraw from further defense and to tender control of

---

federal authority for analyzing case under exception).

**8.** See *supra* page 98, notes 6 and 7.

**9.** *Penn Nat'l Mut. Ins. Co.*, 964 F.2d at 481.

said defense to the Insureds. [Ulico] shall have no liability for Defense Costs of Loss accruing thereafter. . . .

We do not agree that the *Wilkinson* exception should be interpreted as narrowly as Ulico contends it should be. The San Antonio Court of Appeals has held that an insurer assumed the insured's defense under similar facts. In *Katerndahl v. State Farm Fire & Casualty Co.,* the insured had filed for divorce and was already represented by counsel of his own choosing when he filed a claim on his homeowner's insurance asking to be defended against a counterclaim filed by his wife in the divorce action. 961 S.W.2d at 520, 524. The appellate court held that "it is undisputed that State Farm provided Dr. Katerndahl a defense under a reservation of rights. Specifically, State Farm informed Dr. Katerndahl, in writing, that it would provide him a defense against his wife's claims." *Id.* at 521. The cases relied on by Ulico are inapposite because the insureds in those cases were never sued, so there was no defense to assume. *See Tull,* 146 S.W.3d at 695; *Basco v. McNeill Ins. Agency,* No. 09–99–00234–CV, 2000 WL 992137, at *3 (Tex.App.-Beaumont 2000, no pet.) (not designated for publication) (stating also that insurer only conducted investigation of underlying claims, refused to discuss the claim with one of the parties that had been sued, and never responded to the third party claimants' demand letter).

Moreover, that the *Allen* suit was resolved in Ulico's favor on summary judgment did not alleviate the *potential* for conflict between Ulico and the Association. Although Ulico did not control the Association's counsel or its defense of the *Allen* suit, it did agree to pay the Association's defense costs and also attempted to assert the provision in its policy prohibiting the Association from incurring defense costs without prior approval. Had the Association not been granted summary judgment, Ulico, knowing that it was investigating the coverage issue, could have refused to approve fees and costs related to discovery, the procurement of experts, or other matters related to the Association's defense. *Wilkinson* and cases applying the *Wilkinson* exception do not require the presence of an actual conflict; they are based on the *potential* for a conflict between the insurer and insured. *See State Farm Lloyds,* 791 S.W.2d at 551; *Wilkinson,* 601 S.W.2d at 522. Ulico should not get a "free pass" here simply because the Association successfully defended the claim against it.

## B. Whether the Association Suffered Prejudice

 Ulico further contends that the Association cannot show that it was prejudiced by Ulico's failure to withdraw its coverage of defense costs until after the Association had already incurred defense costs in the *Allen* suit. "[A]pplication of the doctrines of estoppel or waiver under the *Wilkinson* exception requires a showing that the insured was prejudiced by the insurer's conduct." *Tull,* 146 S.W.3d at 695.

Bowers testified that around the time she received Hoffman's bills, she spoke to her director, Karen Sheppard, "about the coverage [for the Association's defense costs] having been issued improperly." She stated that she did not remember exactly when the discussion occurred, but "it was definitely prompted by the pleadings received and the bills received from Mr. Hoffman." She believed that the amount of the bills, coupled with the pleadings, made her go back and review the file. After her first meeting with Sheppard, Bowers had another meeting with Sheppard and Ulico's chief legal officer, Joe

Carabillo, but she could not recall when that meeting occurred either. Bowers estimated that she had less than ten meetings with Carabillo between May 3, 2001 and November 18, 2001, probably occurring over a couple of weeks or "less than a month" before Ulico sued the Association.

On September 17, 2001, Hoffman wrote Bowers a letter telling her that the trial court in the *Allen* suit granted summary judgment in the Association's favor and asking her to pay his bills. Bowers could not recall if Ulico had decided not to pay the defense costs at that time. On October 23, 2001, Hoffman sent Bowers another letter, informing her that the *Allen* suit plaintiffs had appealed the summary judgment and asking her again for a response regarding the outstanding defense costs. Ulico did not respond to either of Hoffman's letters. On November 28, 2001, Ulico filed this declaratory judgment action against the Association. The *Allen* suit plaintiffs decided not to pursue their appeal.

Hoffman testified that if Ulico had denied coverage within fifteen days of receiving the claim, he would have "officially" asked for, and negotiated a premium for, an extended reporting period under the policy. When asked whether he would have done anything differently in the *Allen* suit, Hoffman responded, "Given the result, no." Hoffman agreed generally with Ulico's attorney that given the result of the case, the only harm the Association suffered was that Ulico did not reimburse the Association for defense costs. During direct examination by the Association, Jeffrey Chanon, an insurance producer with Waldman Brothers, the Association's insurance broker, agreed that as a part of

"custom and practice" in the industry, insurance companies will extend policy coverage without payment of an additional premium in order to maintain relationships with customers.[10]

In *Katerndahl,* which is somewhat factually similar to this case, the San Antonio court of appeals held that the insured was not harmed by the insurer's promise to provide coverage for defense costs. *Katerndahl,* 961 S.W.2d at 524. The court determined that "Dr. Katerndahl behaved exactly as he did before the statement [agreeing to provide a defense] was made; that is, he participated in the defense of his case with his attorney of choice." *Id.* The court also noted that the record showed that Dr. Katerndahl himself did not believe his homeowner's insurance covered the medical malpractice-related claims against him and that he thought it was "ridiculous" to expect the insurer to defend him against those claims. *Id.*

Here, the Association was also able to defend itself with counsel of its choice. However, the evidence shows that although the Association received a favorable outcome in the *Allen* suit, it was nevertheless harmed by Ulico's representation that it would provide coverage for defense costs. First, the Association was denied the opportunity to negotiate a satisfactory premium for an extension of coverage in the face of seeking to defend a third party claim against 218 plaintiffs.[11] Additionally, there is some evidence that "custom and practice" in the industry is to provide such an extension without payment of a premium in order to maintain relations between the insurer and insured. Here, the Association did not renew its policy with Ulico, but instead bought a new

---

10. Ulico did not object to this testimony.

11. In his May 2001 letter to Bowers, Hoffman estimated that the Association had a 50%

chance or better of prevailing in the *Allen* suit.

policy from Legion Insurance Company before reporting the *Allen* suit to Ulico; however, there is no evidence that Ulico would not have extended the reporting deadline. It had already extended the expiration date of the policy twice upon the Association's payment of an additional premium.

Moreover, the Association was harmed by Ulico's six-month silence in the face of Hoffman's repeated inquiries into the payment of the defense costs that Ulico had promised it would pay. Instead of immediately informing the Association about Bowers's mistake,[12] Ulico waited six months to take any action. And when Ulico finally took action, it initiated a declaratory judgment action against the Association, forcing it to incur additional attorney's fees in defense of the declaratory judgment. There is no evidence that Ulico informed the Association either verbally or in writing that it was withdrawing its coverage of defense costs prior to filing the declaratory judgment action. *Cf. Providence Washington Ins. Co. v. A & A Coating, Inc.*, 30 S.W.3d 554, 557 (Tex.App.-Texarkana 2000, pet. denied) (holding that insurer who validly reserved its right to deny coverage and who expressly agreed to give notice before withdrawing coverage waived right to withdraw by waiting seven months from the time it knew of policy defense to the time it gave notice of withdrawal); *W. Cas. & Surety Co. v. Newell Mfg. Co.*, 566 S.W.2d 74, 77 (Tex.Civ.App.-San Antonio 1978, writ ref'd n.r.e.)

(same).[13] We therefore conclude and hold that there is more than a mere scintilla of evidence that the Association was prejudiced by Ulico's actions, that the *Wilkinson* factors have been met, and that *Wilkinson* applies under these facts.

Having determined that the *Wilkinson* exception applies, we conclude that there is legally sufficient evidence to support the jury's findings on waiver and estoppel; thus, the trial court did not err by denying Ulico's request for a directed verdict and its motion for JNOV on that issue. We overrule Ulico's first issue.

## V. Propriety of JNOV on Damages

In its second issue, Ulico contends that the trial court erred in granting JNOV as to the damages awarded by the jury and entering judgment for a greater amount of damages than the jury found.

The rules regarding JNOV apply to damage awards. *Johnson Roofing, Inc. v. Staas Plumbing Co.*, 823 S.W.2d 783, 790 (Tex.App.-Waco 1992, no writ). Thus, the trial court's granting of the JNOV was proper if there is no evidence supporting the jury's damage finding of $308,235 and if the evidence establishes the trial court's damage award of $616,468.35 as a matter of law. *See Cont'l Coffee Prods. Co.*, 937 S.W.2d at 450; *Johnson Roofing, Inc.*, 823 S.W.2d at 790.

Because the Association's cause of action against Ulico was for recovery under an insurance policy, a contract, we look

---

**12.** Bowers testified that she discovered her mistake shortly after receiving Hoffman's bills.

**13.** Even assuming that Bowers's March 2000 letter validly reserved Ulico's right to withdraw its defense based on noncoverage due to late-reporting, her second, April 2001 letter omitted any reservation of rights language. *See Wilkinson*, 601 S.W.2d at 522–23 (holding that letters dated same day, one extending

unconditional coverage, and the other reserving the right to contest coverage, created ambiguity; thus, insurer was deemed to have extended unconditional coverage); *cf. Katerndahl*, 961 S.W.2d at 521 ("Once a defense is taken under a valid reservation of rights, the insurer may withdraw the defense *when it becomes clear that there is no coverage under the applicable policy.*" (emphasis added)).

to the language of the policy to determine the proper measure of damages. *See Great Tex. County Mut. Ins. Co. v. Lewis,* 979 S.W.2d 72, 73 (Tex.App.-Austin 1998, no pet.). The policy states that Ulico will pay on the Association's behalf all "Loss" that the Association "shall become legally obligated to pay" as a result of a timely-reported claim. The policy defines "Loss" as "the total amount" the Association "becomes legally obligated to pay" as a result of such claims, and includes "Defense Costs." "Defense Costs" are defined as

 costs, charges and expenses (other than regular or overtime wages, salaries or fees of the trustees, directors, officers, or employees of the [Association]) incurred in the defense of legal actions, claims, or proceedings and appeals therefrom and the cost of appeal, attachment or similar bonds and is a part of, and not in addition to, the limit of liability provided in item 3 of the Declarations.

The liability limits of the policy are $2,000,000 for each Loss. An endorsement to the policy further provides that the Association may select its own counsel and that Ulico may not unreasonably withhold its consent to the selection.

The Association introduced into evidence Hoffman's May 3, 2001 response to Bowers, to which Hoffman attached copies of an invoice from his firm showing total legal fees and expenses that had been paid by the Association at that time in the amount of $589,302.83. Hoffman had also attached the completed "Defense Attorney's Evaluation" that Bowers had requested, in which he informed Ulico that the plaintiffs in the *Allen* suit sought $13 million to $62 million in damages. He estimated that the Association had a 50

percent chance of prevailing and noted that "[i]f we [the Association] prevail on summary judgment, expenses could be capped at current amount." The Association also introduced into evidence an exhibit containing a summary of the total legal fees and expenses that it had paid in connection with the *Allen* suit, $641,468.55, along with copies of supporting invoices. Hoffman testified that all of the costs were reasonable and necessary in the defense of the *Allen* suit, that he charged the rates he and the Association had agreed on, and that he billed the Association fairly and did not overbill them. Hoffman testified that the total defense costs were $641,468.55 and that the Association paid that entire amount. Because the Association's policy had a policy deductible of $25,000, it sought $616,468.55 as damages.

Bowers testified that she had not reviewed the bills Hoffman submitted to determine if they complied with Ulico's litigation management guidelines, which were admitted into evidence. Hoffman did not sign the litigation management guidelines she sent him in March 2000, nor did he sign the copies that she resent in April 2001. According to Bowers, there is nothing that says attorneys have to sign the guidelines, but "if they want their bills paid, it would be a good idea for them to sign" them. Bowers further testified, however, that she had not determined that there were any unwarranted or unjustified items included in the bills.

The only controverting evidence Ulico points to is its litigation management guidelines, claiming that the jury could have determined that the total fees charged by Hoffman's firm were unreasonable based on violations of the guidelines.[14]

14. We note that although the jury charge asked, without objection, "What sum of money, if any, paid now in cash, would fairly and

reasonably compensate the [Association] for its reasonable defense costs in the [*Allen* suit]?," the policy definition of defense costs

But nothing in the Association's policy indicates that defense costs must be in compliance with the litigation management guidelines promulgated by Ulico, and there is no evidence as to what the reasonableness of the costs would have been if the guidelines had been complied with. In addition, it is clear that here the jury "split the baby" and simply divided the damages proved by the Association in half.

Ulico also contends that because the policy states that no defense costs may be accrued without Ulico's consent, the jury "was entitled to determine a point in time after which it was unreasonable for the [Association] to continue incurring defense costs without Ulico's prior consent." Then, in its reply brief, Ulico contends that because most of the defense costs were incurred *before* Bowers's March 2000 letter agreeing to pay for defense costs, the jury could have determined that Ulico should not be liable for those costs. But although the amount of litigation expenses can be calculated from the record based on the date they were incurred, it is impossible to determine from the record what amount of attorney's fees were incurred at any given point in time during the *Allen* suit because the invoices submitted as evidence do not give individual billing rates or total amounts billed for each individual working on the suit for each date fees were incurred. More specifically, and by way of example, the first invoice shows fees incurred between October 4, 1999 and March 5, 2001. For the first thirty-four pages, it lists the date each individual worked on the file, a description of what the individual did, and the amount of time he or she spent on the task. At the end of this thirty-four page summary, the invoice shows the total time worked for all persons working on the file and the total amount of fees billed during that period. There is no

segregation of fees by either individual or date. Thus, there is no way the jury could have determined that fees and expenses as of a certain date were $308,235.

Accordingly, we hold that there is no evidence to support the jury's damage award of $308,235 and that the Association proved as a matter of law that it was entitled to $616,468.55 in damages for the defense costs it paid in connection with the *Allen* suit; thus, the trial court's JNOV was proper. *See Hill v. Spencer & Son, Inc.*, 973 S.W.2d 772, 776 (Tex.App.-Texarkana 1998, no pet.) (holding that no evidence supported jury's damage award of $4,500, but evidence conclusively proved damages of $18,000 as a matter of law; therefore, trial court should have granted JNOV as to damages); *Van Waters & Rogers, Inc. v. Quality Freezers, Inc.*, 873 S.W.2d 460, 463, 465 (Tex.App.-Beaumont 1994, writ denied) (holding that no evidence supported jury's damage award and that evidence conclusively proved damages in amount awarded by trial court; thus, JNOV as to damages was proper). We overrule Ulico's second issue.

## VI. The Association's Entitlement to Attorney's Fees and Statutory Interest

In three cross-issues, the Association contends that it was entitled to recover attorney's fees in this declaratory judgment suit under section 38.001 of the Texas Civil Practice and Remedies Code and article 21.55 of the Texas Insurance Code. It also contends that it was entitled to statutory interest under article 21.55. We will address the Association's third and second cross-issues first because they are dispositive. *See* TEX.R.APP. P. 47.1; *Tex. Mut. Ins. Co. v. Surety Bank, N.A.*, 156

does not require that such costs be reasonable.

S.W.3d 125, 131 n. 4 (Tex.App.-Fort Worth 2005, no pet.).

## A. Propriety of Attorney's Fees under Section 21.55 of Insurance Code

In its third cross-issue, the Association contends that it is entitled to statutory interest and attorney's fees in this declaratory judgment suit in accordance with article 21.55 of the insurance code. TEX.INS. CODE ANN. art. 21.55 (Vernon Supp.2004–05). Article 21.55 sets forth deadlines by which an insurance company must respond to a claim. See id.; TIG Ins. Co. v. Dallas Basketball, Ltd., 129 S.W.3d 232, 239 (Tex. App.-Dallas 2004, pets. denied). A "claim" is defined as "a first party claim made by an insured or a policyholder under an insurance policy or contract or by a beneficiary named in the policy or contract that must be paid by the insurer directly to the insured or beneficiary." TEX.INS. CODE ANN. art. 21.55, § 1(3); TIG Ins. Co., 129 S.W.3d at 239. If an insurance company does not comply with the requirements of the article, it is liable to pay "in addition to the amount of the claim, 18 percent per annum of the amount of the claim as damages, together with reasonable attorneys fees." TEX.INS. CODE ANN. art. 21.55, § 6; TIG Ins. Co., 129 S.W.3d at 239. A wrongful refusal to pay a claim may be considered a failure to meet the requirements of article 21.55. See TIG Ins. Co., 129 S.W.3d at 239; see also Higginbotham v. State Farm Mut. Auto. Ins. Co., 103 F.3d 456, 461 (5th Cir.1997) (applying Texas law).

▮▮ The Association contends that its claim against Ulico for the recovery of costs incurred in defending the Allen suit is "a first party claim that had to be paid directly to the Association—the insured." The Association relies on Texas supreme court dicta, as well as several federal cases and a Corpus Christi court of appeals case construing article 21.55, in contending that article 21.55 applies to breach of contract claims against an insurer for failure to provide a defense or pay for defense costs even when the claim is in connection with a third party claim against the insured. See State Farm Fire & Cas. Co. v. Gandy, 925 S.W.2d 696, 714 (Tex.1996); N. County Mut. Ins. Co. v. Davalos, 84 S.W.3d 314, 318–19 (Tex.App.-Corpus Christi 2002), rev'd on other grounds, 140 S.W.3d 685 (Tex.2004); see, e.g., Rx.com, Inc. v. Hartford Fire Ins. Co., 364 F.Supp.2d 609, 620 (S.D.Tex.2005); Housing Auth. of Dallas, Tex. v. Northland Ins. Co., 333 F.Supp.2d 595, 603 (N.D.Tex.2004) ("This court therefore believes that, in light of the appellate court's opinion in Davalos, the supreme court's dicta in Gandy and the holdings of several federal district courts, the Texas supreme court would likely decide that claims for defense are first party claims for purposes of Article 21.55.").

Relying on the Dallas court of appeals's contrary holding in TIG Insurance Co. v. Dallas Basketball, Ltd., Ulico contends that article 21.55 does not apply here because "[w]ell-established breach of contract case law provides procedures for resolving the duty to defend issues in this coverage action," and article 21.55, "by its plain language, applies only to first-party claims."

▮▮▮ When a statute is clear and unambiguous, we "should give the statute its common meaning." St. Luke's Episcopal Hosp. v. Agbor, 952 S.W.2d 503, 505 (Tex.1997). When language in a statute is unambiguous, we will seek the intent of the legislature as found in the plain and common meaning of the words and terms used. Id.; In re K.L.V., 109 S.W.3d 61, 65 (Tex.App.-Fort Worth 2003, pet. denied). We do not need to resort to rules of construction or extrinsic aids to construe a statute that is clear and unambiguous. St.

*Luke's Episcopal Hosp.*, 952 S.W.2d at 505; *Cail v. Serv. Motors, Inc.*, 660 S.W.2d 814, 815 (Tex.1983). When a statute fails to define a term, we apply and use its plain meaning. *See* TEX. GOV'T CODE ANN. § 312.002 (Vernon 2005) (instructing appellate court to use words' ordinary meaning). We should not adopt a construction that would render a law or provision meaningless. *Centurion Planning Corp. v. Seabrook Venture II*, 176 S.W.3d 498, 504 (Tex.App.-Houston [1st Dist.] 2004, no pet.). Article 21.55 applies to "a first party claim ... that *must be paid by the insurer directly to the insured or beneficiary.*" TEX.INS. CODE ANN. art. 21.55, § 1(3) (emphasis added). First party insurance protects an insured against damage to the insured's own property and provides recovery for the insured's own personal injuries. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 53 n. 2 (Tex.1997); *State Farm Lloyds*, 960 S.W.2d at 788–89. "[A] first party claim is one in which an insured seeks recovery for the insured's own loss." *Universe Life*, 950 S.W.2d at 53 n. 2. In contrast, a third party claim "requires the insurer to perform its duty to indemnify not directly to the insured but directly, on the insured's behalf, to a third party claimant injured by the insured's conduct." *Hartman v. St. Paul Fire & Marine Ins. Co.*, 55 F.Supp.2d 600, 603 (N.D.Tex.1998). In addition, insurance policies covering third party claims typically obligate the insurer to defend the insured in third party actions covered by the policy. *Houston Petroleum Co. v. Highlands Ins. Co.*, 830 S.W.2d 153, 155 (Tex.App.-Houston [1st Dist.] 1991, writ denied). The duty to defend arises only in connection with a third party claim. *Id.*

The Association's claim for costs incurred in defending the *Allen* suit does not involve damage to its own property, nor does it seek recovery for its own personal injuries. The Association's claim is for costs incurred in connection with the defense of a third party claim, the *Allen* suit, for which Ulico agreed to reimburse the Association in accordance with the policy. Although, here, defense costs are payable directly to the Association because it chose to pay for defense expenses as they were incurred, the policy does not require the Association to pay for such expenses. Specifically, the policy states that Ulico "shall have the right and duty to defend any suit to which this insurance applies alleging a claim against [the Association] even if any of the allegations are groundless, false or fraudulent, or alternatively may, at the option of [Ulico], give its written consent to the defense of any such suit by [the Association]." In addition, the policy provides that Ulico "shall pay *on behalf of* [the Association] all Loss to which [the Association] shall become legally obligated to pay." Thus, under the policy, the Association could have chosen to have Ulico engage an attorney on its behalf or pay expenses related to the defense directly to the party to whom they were owed. Therefore, the Association's claim for defense costs is not one that "*must* be paid by the insurer directly to the insured or beneficiary." TEX.INS. CODE ANN. art. 21.55, § 1(3) (emphasis added).

The Dallas court of appeals has held that article 21.55, section 6 does not apply to a claim for reimbursement of defense costs in connection with the defense of a third party claim. *TIG Ins. Co.*, 129 S.W.3d at 242. The court based its decision on its construction of the plain language of the statute, including article 21.55 as a whole, holding that "[t]he entire structure of article 21.55 presumes a tangible, measurable loss suffered by the insured for which he seeks payment from the insurance company. Any attempt to apply the statute's structure to a claim for a defense is unworkable and, based on the

language of the statute, clearly unintended by the legislature." *Id.* at 239.

We find the reasoning of the Dallas court persuasive[15] and hold that article 21.55 does not apply to claims for reimbursement of defense costs incurred in defending a third party claim.[16] In doing so, we recognize that we are holding contrary to *Davalos*—which was reversed on other grounds—and the decisions of several federal courts construing Texas law.[17] But although we may rely on federal authority as persuasive, we are not bound by it. *Davenport v. Garcia,* 834 S.W.2d 4, 20 (Tex.1992) (orig.proceeding); *Westchester Fire Ins. Co. v. Admiral Ins. Co.,* 152 S.W.3d 172, 183 (Tex.App.-Fort Worth 2004, pet. filed). Moreover, the federal courts holding contrary to *TIG* did not analyze the issue with the same amount of detail as did the Dallas court of appeals; instead, they rely on *Davalos* and the dictum in *Gandy* without considering the persuasiveness of those authorities on the issue. *See, e.g., Rx.com, Inc.,* 364 F.Supp.2d at 620; *Housing Auth. of Dallas, Tex.,* 333 F.Supp.2d at 603.

With respect to *Gandy,* we are not bound by dictum unless it is judicial dictum, which is "a statement by the supreme court made very deliberately after mature consideration and for future guidance in the conduct of litigation [and which] is 'at least persuasive and should be followed unless found to be erroneous.'" *Edwards v. Kaye,* 9 S.W.3d 310, 314 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (quoting *Palestine Contractors, Inc. v. Perkins,* 386 S.W.2d 764, 773 (Tex.1964)). In *Gandy,* the supreme court, in discussing a hypothetical involving a coverage dispute in the context of a third party claim, stated that the insured should be able to recover attorney's fees against its insurer in a declaratory action to determine whether coverage existed for the third party claim, citing both the former version of section 38.001 and article 21.55, section 6. *Gandy,* 925 S.W.2d at 714. It also concluded that the insured *may* be able to recover statutory interest under article 21.55, section 6. *Id.* Although we consider this dictum to be persuasive for the proposition that an insured is entitled to recover attorney's fees in this instance, we are not convinced that this statement in *Gandy* is persuasive for the proposition that an insured is entitled to attorney's

---

**15.** The San Antonio and Houston 14th courts of appeals have also agreed with the reasoning of *TIG* and held that article 21.55 does not apply to third party claims. *Serv. Lloyd's Ins. Co. v. J.C. Wink, Inc.,* 182 S.W.3d 19, 32 (Tex.App.-San Antonio 2005, pet. filed) (pertaining to insured's request for defense of third party claim); *Lennar Corp. v. Great Am. Ins. Co.,* No. 14–02–00860–CV, 2005 WL 1324833, at *36 (Tex.App.-Houston [14th Dist.] June 2, 2005, no pet. h.) (pertaining to insured's request for indemnification of third party claim).

**16.** Although *TIG* involved an insured's attempt to require its insurer to provide it a defense in a third party action after the insurer's refusal to defend, rather than an attempt to recoup defense costs covered under the policy that the insurer has refused to pay, the same analysis of the statute applies. *TIG Ins. Co.,* 129 S.W.3d at 240 ("[T]o the extent the insured pays for his own defense and seeks to be reimbursed for these payments, his claim for reimbursement is not a claim under the policy but rather a common law claim for damages.").

**17.** *See Davalos,* 84 S.W.3d at 318–19. *TIG* described the *Davalos* decision as follows:

In *Davalos,* the court assumes without discussion that article 21.55 applies to an insured's claim for a defense. *See Davalos,* 84 S.W.3d at 318–19. The court then goes on to affirm the trial court's award of damages based on this assumption. Absent any reasoning to support the application of 21.55, *Davalos* is not persuasive.
*TIG Ins. Co.,* 129 S.W.3d at 241.

fees under article 21.55, section 6.[18] Moreover, the supreme court has denied Dallas Basketball's petition for review and has denied its motion for rehearing after the federal decisions. Although we may not infer that the supreme court's decision was related to the merits, the fact remains that *TIG* is still valid and has not been overturned.

For these reasons, we conclude that the Association is not entitled to statutory interest and attorney's fees under article 21.55. We overrule the Association's third cross-issue.

## B. Propriety of Attorney's Fees under Section 38.001 of the Civil Practice and Remedies Code

■ In its second cross-issue, the Association claims that it was entitled to attorney's fees under section 38.001 because its recovery under waiver and estoppel theories is in effect a recovery under the terms of the insurance policy, a contract. We agree.

■ The issue of whether a party is entitled to recover attorney's fees is a question of law for a court to determine de novo. *Holland v. Wal–Mart Stores, Inc.*, 1 S.W.3d 91, 94–95 (Tex.1999); *Taylor Elec. Servs., Inc. v. Armstrong*, 167 S.W.3d 522, 532 (Tex.App.-Fort Worth 2005, no pet.); *VingCard A.S. v. Merrimac Hospitality Sys., Inc.*, 59 S.W.3d 847, 867 (Tex.App.-Fort Worth 2001, pet. denied). Here, the trial court made conclusions of law on the attorney's fees issue, which the Association challenges in its cross-issue. Conclusions of law may not be challenged for factual sufficiency, but they may be reviewed to determine their correctness based upon the facts. *Rogers v. City of Fort Worth*, 89 S.W.3d 265, 277 (Tex.App.-Fort Worth 2002, no pet.).

■ A party may recover reasonable attorney's fees in addition to the amount of a valid claim and costs if the party's claim is for breach of an oral or written contract. TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8). A policyholder who successfully sues an insurer for breach of contract suit is entitled to recover attorney's fees under section 38.001 unless the insurer is liable for attorney's fees under another statute. *Grapevine Excavation, Inc.*, 35 S.W.3d at 5.

The Association alleged in its complaint against Ulico that "Ulico has waived, and is estopped to assert, any defenses it may have had to paying the [*Allen* suit] Costs, and has waived and is estopped to assert any right to rely on the Policy provisions to deny the [Association's] insurance claim." The jury charge asked, "Is Ulico estopped from asserting that the [Association's] claim for attorney's fees and expenses incurred in defending the [*Allen* suit] is not covered by the Policy?" and "Has Ulico waived its right to assert that the [Association's] claim for attorney's fees and expenses incurred in defending the [*Allen* suit] is not covered by the Policy?" The jury answered "Yes" to both questions. In determining that the Association was not entitled to attorney's fees, the trial court concluded the following:

1. Ulico did not breach the Policy in question in this case because the [Association] did not notify Ulico of the lawsuit until after the Policy terminated

---

**18.** Based on subsequent supreme court authority, an insured would not be entitled to recover attorney's fees under both of these statutes. *See Grapevine Excavation, Inc. v. M.D. Lloyds*, 35 S.W.3d 1, 5 (Tex.2000) (holding that insured is entitled to recovery of attorney's fees under section 38.001(8) of civil practice and remedies code in breach of contract case based on insurance policy only if insured is not entitled to recover attorney's fees under any other statute).

(thereby failing to make a claim within the policy period.)

2. Ulico did not breach the Policy because the Policy did not cover the [Association's *Allen* suit] claim.

3. Because Ulico did not breach the Policy, the [Association] is not entitled to recover its attorney's fees in *this* case.

. . . .

7. The jury's findings of waiver and estoppel, and the Judgment based upon the findings, do not support the [Association's] claim for attorney's fees based upon a breach of the Policy. [Emphasis added.]

The Association claims that the jury's findings that Ulico was estopped from asserting, and waived its right to assert, that the Association's claim for attorney's fees and expenses incurred in defending the *Allen* suit is *"not covered by the Policy"* shows that the claim was covered by the policy. Ulico contends that the Association's recovery was not under *the policy* because the trial court vacated the jury's findings that Ulico agreed to grant the Association an extended reporting period under the policy and by separate agreement; therefore, the Association did not prevail on its breach of contract claim against Ulico. According to Ulico, "waiver and estoppel under the *Wilkinson* doctrine are not claims for breach of an insurance policy."

We disagree. Under the *Wilkinson* exception, an insurance company is estopped from asserting any defenses *to the policy,* including the defense of noncoverage. *Tull,* 146 S.W.3d at 694; *State Farm Lloyds,* 960 S.W.2d at 785; *see also Employers Cas. Co.,* 496 S.W.2d at 561 ("Its conduct being violative of the guiding principles and public policy heretofore discussed, we hold that Employers is estopped as a matter of law from denying

the responsibilities *under its policy* for defense of the Starky suit." (emphasis added)). By its terms, the *Wilkinson* doctrine is an exception to the general rule that coverage cannot be created by estoppel. *Tull,* 146 S.W.3d at 694; *State Farm Lloyds,* 960 S.W.2d at 785; *Wilkinson,* 601 S.W.2d at 521–22. Thus, if the *Wilkinson* exception applies, a finding of estoppel creates coverage under the policy where none existed. Consequently, the jury's finding here entitled the Association to recovery of its defense costs in accordance with the terms of the policy.

Ulico relies on case law holding that attorney's fees may not be awarded when there is no coverage under the policy. *See Evergreen Nat'l Indem. Co. v. Tan It All, Inc.,* 111 S.W.3d 669, 679 (Tex.App.-Austin 2003, no pet.). But the *Evergreen* case cited by Ulico is inapposite; it does not involve a finding that the insurance company was estopped from asserting noncoverage defenses to a breach of contract action on the policy. *See id.; see also State Farm Lloyds,* 960 S.W.2d at 784 n. 3 (noting that trial court awarded policyholder attorney's fees in case in which liability based on *Wilkinson* exception). Thus, we hold that the Association was entitled to recover attorney's fees from Ulico under section 38.001(8). *See* Tex. Civ. Prac. & Rem.Code Ann. § 38.001(8); *Grapevine Excavation, Inc.,* 35 S.W.3d at 5.

A trial court must award attorney's fees to the prevailing party in a suit founded on a written or oral contract if there is evidence of the reasonableness of the fees. *See World Help v. Leisure Lifestyles, Inc.,* 977 S.W.2d 662, 683 (Tex.App.-Fort Worth 1998, pet. denied). A trial court has discretion in fixing the amount of attorney's fees, but it has no discretion to entirely deny attorney's fees established under section 38.001. *See Bocquet v. Her-*

*ring,* 972 S.W.2d 19, 20 (Tex.1998); *World Help,* 977 S.W.2d at 683.

Because the Association's recovery in this case was based on Ulico's nonpayment of defense costs in accordance with the terms of the insurance policy, we conclude that the trial court erred by failing to award the Association its reasonable and necessary attorney's fees under section 38.001(8). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8); *Grapevine Excavation, Inc.,* 35 S.W.3d at 5. We sustain the Association's second cross-issue.

## VII. Conclusion

Having overruled Ulico's two issues, we affirm the trial court's judgment as to Ulico's liability and the trial court's damage award. But, having sustained the Association's second cross-issue, we reverse the trial court's take-nothing judgment in Ulico's favor as to the Association's section 38.001(8) claim for attorney's fees incurred in this declaratory judgment action. Because the trial court has not yet exercised its discretion with respect to the amount of attorney's fees that the Association may recover—because it determined that the Association was not entitled to any attorney's fees—we remand the attorney's fees issue to the trial court for a determination of the amount of attorney's fees that the Association may recover from Ulico. *See City of Sherman v. Henry,* 928 S.W.2d 464, 474 (Tex.1996), *cert. denied,* 519 U.S. 1156, 117 S.Ct. 1098, 137 L.Ed.2d 230 (1997); *Nat'l Cas. Co. v. Lane Express, Inc.,* 998 S.W.2d 256, 266 (Tex.App.-Dallas 1999, pet. denied).