COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-07-239-CV

 

 

AMX
ENTERPRISES, L.L.P.,                                                   APPELLANT

F/K/A AMX ENTERPRISES,
INC.

 

                                                   V.

 

MASTER REALTY CORP.                                                         APPELLEE

 

                                              ------------

 

           FROM THE 141ST
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                OPINION ON REHEARING

 

                                              ------------

 

We grant Appellant AMX Enterprises, L.L.P.=s motion
for rehearing in part, deny it in part, withdraw our opinion and judgment of
January 8, 2009, and substitute the following. 
The only changes from our original opinion are the additions of this
paragraph and the last sentence of this opinion on rehearing.








Among the issues in this case are three questions
of first impression: Whether a trial court may toll the accrual of statutory
interest under the Prompt Payment to Contractors Act[1]
for periods of delay attributable to the claimant; whether a contractor who
prevails on a claim under the Act may recover both 18% prejudgment interest
under the Act and common law prejudgment interest; and whether attorney=s fees
for in-house counsel should be calculated under the Amarket
rate@ method
or the Acost-plus@
method.  We answer Ano@ to the
first question, Ano@ to the
second, and Amarket rate@ to the
third.  We affirm the trial court=s
judgment in part, reverse and render in part, and remand for a new trial on
attorney=s fees.

                                            Background








In April 2002, Appellee Master Realty Corp. (AMRC@) hired
Appellant AMX to remediate flood damage in a hotel owned by MRC for the
contract price of $469,834.  During its
work on the project, AMX submitted three invoices to MRC, as follows:  An invoice for $46,983 dated October 14,
2002; an invoice for $305,392.10 dated November 11, 2002; and an invoice for
$117,458.90 dated January 31, 2003. 
Together, the invoice amounts equal the contract price of $469,834.  MRC paid AMX $46,983 on November 4, 2002;
$200,000 on February 19, 2003; and $175,951 on March 10, 2003, for a total
payment of $422,934, leaving a balance on the contract price of $46,900.

On October 23, 2003, AMX sued MRC for breach of
contract, violation of the Prompt Payment to Contractors Act, judicial foreclosure
of its constitutional lien, and attorney=s
fees.  MRC filed a general denial.

MRC sold the hotel to Composite Investments, Inc.
in July 2004 and, because of AMX=s lien on
the property, placed $93,800 in an escrow account to facilitate the sale.  AMX joined Composite as a defendant, seeking
judicial foreclosure of the lien AMX had placed on the property, but AMX later
agreed to dismiss its lien with prejudice in exchange for Composite=s
depositing $93,800 into the trial court registry.

AMX and MRC tried their dispute to a jury in
September 2006.  The parties stipulated
the facts related to AMX=s Prompt Payment to Contractors
Act claim, namely, the dates and amounts of AMX=s
invoices and of MRC=s payments.  The jury rendered a verdict in favor of AMX
for $46,900.  The parties agreed to
submit the issue of attorney=s fees
to the court.








AMX moved for the entry of judgment on the
verdict, seeking a judgment of $46,900 in contract damages awarded by the jury;
statutory interest under the Prompt Payment to Contractors Act in the amount of
$46,452.86; common law prejudgment interest; attorney=s fees
in an amount between $221,768.49 and $254,110.16, of which an amount between
$194,049.99 and $226,391.66 was attributable to work done by AMX=s
in-house counsel; court costs; and postjudgment interest.

The trial court entered judgment on May 31,
2007.  The judgment awarded AMX $46,900
in contract damages, $18,758.43 in statutory interest under the Prompt Payment
to Contractors Act, no common-law prejudgment interest, and no attorney=s
fees.  Upon AMX=s
request, the trial court made findings of fact and conclusions of law.  Among other things, the trial court found
that AMX had Acaused significant periods of
delay@ in the
litigation totaling 745 days and that AMX had failed to prove that it had
actually incurred the attorney=s fees
it claimed.  AMX filed this appeal.

                                             Discussion

I.                  
Tolling
of prejudgment interest under the Prompt Payment to Contractors Act

In
its first issue, AMX argues that the trial court erred by tolling the accrual
of prejudgment interest under the Prompt Payment to Contractors Act for
litigation delays that the trial court attributed to AMX.








The
Prompt Payment to Contractors Act provides that an owner of real property who
receives a written payment request from a contractor for an amount that is
allowed under a contract for properly performed work or suitably stored or
specially fabricated materials must pay the amount, less any amount withheld as
authorized by statute, not later than the thirty-fifth day after the date the
owner receives the request.  Tex. Prop.
Code Ann. ' 28.002(a).  Section 28.004, captioned AInterest on Overdue Payment,@ provides as follows:

(a) An unpaid amount required under this chapter
begins to accrue interest on the day after the date on which the payment
becomes due.

 

(b) An unpaid amount bears interest at the rate of 1
1/2 percent each month.

 

(c) Interest on an unpaid amount stops accruing under
this section on the earlier of:

 

(1) the date of delivery;

 

(2) the date of mailing, if payment is mailed and
delivery occurs within three days; or

 

(3) the date a judgment is entered in an action
brought under this chapter.

 

Id. ' 28.004. 
Significantly, the Act contains no provision for tolling the accrual of
interest during periods of litigation delay, and no court has held that a trial
court may toll interest accruing under the Act.








MRC
contends that the interest provided by the Act is simply prejudgment interest
and that a trial court has the equitable power to toll its accrual.  In support of its equitable-tolling argument,
MRC cites Helena Chemical Company v. Wilkins (AWilkins I@), in which the San Antonio court
held that a trial court may, in its discretion, issue orders tolling
prejudgment interest during periods of delay. 
18 S.W.3d 744, 760 (Tex. App.CSan Antonio 2000), aff=d, 47 S.W.3d 486 (Tex. 2001) (AWilkins II@). 
Wilkins relied on former finance code section 304.108(b), which
specifically authorized prejudgment interest tolling in wrongful death,
personal injury, and property damage cases. 
Id.; see Act of May 22, 1997, 75th Leg., R.S., ch. 1008, ' 1, 1997 Tex. Gen. Laws 3091,
3436, repealed by Act of May 16, 2003, 78th Leg., R.S., ch. 204, ' 6.03, 2003 Tex. Gen Laws 847,
862.  Although the legislature repealed
section 304.108(b) in 2003, MRC argues that Wilkins is still good law
because the supreme court has not overruled its affirmance of the court of
appeals=s opinion.  But the question of interest tolling was not
appealed to the supreme court.  Wilkins
II, 47 S.W.3d at 491.  Thus, the
supreme court=s affirmance does not add
precedential weight to the San Antonio court=s opinion in Wilkins I, and the repeal of the statute
on which Wilkins I relied destroys its value as persuasive
authority.  On a more fundamental level,
even if former finance code section 304.108(b) were still in effect, it applied
only to wrongful death, personal injury, and property damage cases and thus
would not justify tolling in this contract case.








Because
no authority supports the tolling of prejudgment interest accruing under the
Act, we hold that the trial court erred by failing to award AMX the full amount
of interest mandated by property code section 28.004.  We must now calculate the amount of interest
the trial court should have awarded under the Act on AMX=s three invoices.

MRC
paid AMX=s first invoice within thirty-five
days, so no interest accrued on that invoice. 
AMX=s second invoice, dated November 11,
2002, was for $305,392.10.  Interest
accrued on the full invoice amount from December 17, 2002, until MRC made a
partial payment of $200,000 on February 19, 2003, a span of sixty-four
days.  Sixty-four times the statutory
interest rate (1.5% per month equals 18% per annum equals .05% per day) times
the invoice amount is $9,638.68.

Interest
continued to accrue on the $105,392.10 balance on the second invoice from
February 20 until MRC made its $175,951 payment on March 10, 2003, a total of
eighteen days, for additional interest of $935.54.

Interest
began to accrue on AMX=s third invoice, for $117,458.90, on
March 8, 2003.  When MRC made its
$175,951 payment on March 10, 2003, the total due on the third invoice had
accrued $115.85 in interest.

The
$46,900 balance due on the third invoice continued to accrue interest until the
trial court entered judgment on May 31, 2007, 1,542 days later, during which
time an additional $35,664.56 in interest accrued.








Thus,
the total prejudgment interest due to AMX under property code section 28.004 is
$9,638.68 plus $935.54 plus $115.85 plus $35,664.56 for a total of
$46,354.62.  We sustain AMX=s first issue, reverse the trial
court=s award of $16,792.38 in statutory
interest, and render judgment in favor of AMX for statutory interest in the sum
of $46,354.62.

II.               
Common
law prejudgment interest

In
its second issue, AMX argues that the trial court erred by failing to award it
common law prejudgment interest on the $46,900 in contract damages awarded by
the jury in addition to statutory interest under property code section
28.004.  AMX contends that interest under
section 28.004 is Apenalty interest,@ not Aprejudgment interest,@ and that a prevailing contractor may therefore recover both
forms of interest.








Prejudgment
interest serves two purposes.  First, it
compensates a claimant for lost use of the money due as damages during the
lapse of time between the accrual of the claim and the date of judgment.  Battaglia v. Alexander, 177 S.W.3d
893, 907 (Tex. 2005); Johnson & Higgins of Tex., Inc. v. Kenneco Energy,
Inc., 962 S.W.2d 507, 528 (Tex. 1998); see also Tex. Fin. Code Ann. ' 301.002(a)(4) (Vernon 2006)
(defining Ainterest@ as Acompensation for the use, forbearance, or detention of money@). 
Second, it encourages settlement and removes incentives for delay.  Johnson & Higgins, 962 S.W.2d at
529, 532 (citing Cavnar v. Quality Control Parking, Inc., 696 S.W.2d
549, 554B55 (Tex. 1985), abrogated on other
grounds by Johnson & Higgins, 962 S.W.2d at 535).  Compensation other than for the lost use of
money is not Ainterest.@ 
Battaglia, 177 S.W.3d at 907. 
AOne could call such compensation a
windfall (from the claimant=s perspective) or a penalty or fine
(from the defendant=s perspective), but it is not >interest.=@ 
Id. (noting that nothing in former article 4590i or the
applicable versions of civil practice and remedies code sections 33.012 and
33.013 indicated that the legislature intended for prejudgment interest to
either under- or over-compensate plaintiffs).








Whether
a contractor may recover both 18% interest under the Prompt Payment to
Contractors Act and common law prejudgment interest appears to be a question of
first impression.  Several courts have
affirmed awards of interest under the Act as Aprejudgment interest,@ apparently in lieu of common law prejudgment interest; none
has held that a contractor may recover both. 
See, e.g., RAJ Partners, Ltd. v. Darco Constr. Corp., 217 S.W.3d
638, 646B47 (Tex. App.CAmarillo 2006, no pet.); All
Seasons Window & Door Mfg., Inc. v. Red Dot Corp., 181 S.W.3d 490, 497B99 (Tex. App.CTexarkana 2005, no pet.) (holding
that provision in contract that Aall deferred payments shall bear interest . . . at
the maximum rate permitted by law@ allowed contractor to recover 18% prejudgment interest under
the Act rather than the maximum 6% interest authorized by finance code section
302.002 in contracts that do not specify an interest rate); Talley Const.
Co. v. Rodriguez, No. 01‑03‑01147‑CV, 2006 WL 908180, at
*11 (Tex. App.CHouston [1st Dist.] Apr. 6, 2006, no
pet.) (mem. op. on reh=g) (analyzing contractor=s entitlement to prejudgment interest
under the Act according to rules governing award of common law prejudgment
interest); Henry Bldg., Inc. v. Milam, No. 05‑99‑01400‑CV,
2001 WL 246882, at *3B4 (Tex. App.CDallas Mar. 14, 2001, pet. denied)
(holding trial court erred by awarding contractor 6% prejudgment interest
instead of 18% prejudgment interest under the Act and modifying judgment to
include 18% interest).

Regardless
of whether we deem interest awarded under the Act to be a Apenalty,@ as AMX contends we must, it is,
literally, prejudgment interest; section 28.004, captioned AInterest on Overdue Payment,@ provides that an unpaid amount bears
Ainterest@ until it is paid or until Athe date a judgment is entered.@ 
Tex. Prop. Code Ann. ' 28.004(b), (c).  Further, interest under the Act fulfills both
of the purposes of prejudgment interest: It compensates a claimant-contractor
like AMX for the loss of use of the unpaid money, and it encourages settlement
and removes incentives for delay.  See
Johnson & Higgins, 962 S.W.2d at 529, 532.








The
legislative history of the Act, which AMX cites extensively, shows that the
legislature=s goal in enacting chapter 28 was
consistent with the dual purposes of prejudgment interest.  The Act=s sponsor, Representative Mark Stiles, offered the testimony
of Raymond Risk, who represented the American Subcontractor=s Association of Texas.  The Prompt Payment to Contractors Act:
Hearings on Tex. H.B. 1429 Before the House Comm. on Bus. & Indus., 73rd
Leg., R.S. 3B22 (March 23, 1993) (testimony of
Raymond Risk).  Risk testified that Athe inability to get paid in a timely
manner for work performed is the most serious problem facing subcontractors and
suppliers today.@ 
Id. at 3:15B17. 
He said that A[s]ubcontractors depend on cash flow
generated by the progress payments to meet their payrolls, to make loan
payments, and to pay their suppliers.@  Id. at 4:6B8. 
To the extent that Risk=s testimony reflects the legislature=s intent in passing the Act, interest
under the Act encourages payment, removes incentives for delay, and compensates
contractors for the lost use of money needed to meet payrolls, make loan
payments, and pay suppliersCthe same goals served by common law
prejudgment interest.








The
fact that prejudgment interest under the Act is more than double the applicable
rate of prejudgment interest gives contract debtors an additional incentive to
pay promptly that would not exist but for the Act.  See Johnson & Higgins, 962 S.W.2d
at 532 (holding that the prejudgment interest rate in contract cases is the
same as the postjudgment rate); Tex. Fin. Code Ann. ' 304.003(c) (Vernon 2006)
(setting postjudgment interest rate at the prime rate on the date of
computation as published by the Board of Governors of the Federal Reserve
System); http://www.federalreserve.gov/releases/h15/
data/Daily/H15_PRIME_NA.txt (last accessed January 7, 2009) (listing the prime
rate on May 31, 2007Cthe date of the trial court=s judgmentCas 8.25%).  Moreover, the fact that the Act=s interest potentially accrues on
sums to which common law prejudgment interest 
would not applyCas in this case, where common law
prejudgment interest would accrue only on the $46,900 unpaid at the time of
trialCis a further inducement to prompt
payment.  Thus, allowing a contractor
like AMX to recover 18% prejudgment interest under the Act but not common law
prejudgment interest compensates the contractor for the loss of use of the
unpaid money and provides an added incentive for prompt payment that would not
exist but for the Act.  On the other
hand, to allow a contractor to collect both interest under the Act and common
law prejudgment interest would allow a double recovery of two kinds of interest
designed to promote the same two goals, namely, compensation for loss of use
and the prompt payment of debts.








AMX
cites three cases in which courts have allowed both recovery of interest under
other Aprompt payment@ statutes and common law prejudgment
interest.  Those cases are
distinguishable.  In Dunn v. Southern
Farm Bureau Casualty Insurance Co., the Tyler court held that a claimant
under former insurance code article 21.55 could recover both article 21.55=s 18% per annum penalty on delayed
insurance payments plus prejudgment interest on the  claimant=s personal injury damages (but not prejudgment interest on
the 18% penalty).  991 S.W.2d 467, 470B71, 478B79 (Tex. App.CTyler 1999, pet. denied); see also
Teate v. Mut. Life Ins. Co., 965 F. Supp. 891, 893 (E.D. Tex. 1997) (also
applying former article 21.55).  But
unlike property code section 28.004, former insurance code article 21.55
provided that the 18% penalty on delayed insurance payment was Adamages,@ not interest:  A[T]he insurer shall pay damages . . . as
provided for in Section 6 of this article. . . . [T]he insurer shall
be liable to pay . . . in addition to the amount of the claim, 18 per
cent per annum of the amount of the claim as damages.@ 
Act of May 27, 1991, 72nd Leg., R.S., ch. 242, _ 11.03(a), 1991 Tex. Gen. Laws 939,
1045, repealed by Act of May 20, 2003, 78th Leg., R.S., ch. 1274,  _ 26(a)(1), 2003 Tex. Gen. Laws 4107,
4138 (emphasis added).  Property code
section 28.004, on the other hand, specifically identifies the statutory
interest as Ainterest.@ 
Tex. Prop. Code Ann. ' 28.004.








Likewise,
the statute at issue in Marineau v. General American Life Insurance Co.,
former insurance code article 3.62, provided that a life insurance company that
failed to pay life insurance proceeds within thirty days of demand Ashall be liable to pay the holder of
such policy, in addition to the amount of the loss, twelve (12%) [percent] damages
on the amount of such loss.@ 
898 S.W.2d 397, 404 (Tex. App.CFort Worth 1995, writ denied); Act of June 7, 1951, 52nd
Leg., R.S., ch. 491, _ 3.62, 1951 Tex. Gen. Laws 868, 920, repealed
by Act of May 27, 1991, 72nd Leg., R.S., Ch. 242, _ 12.01(2), 1991 Tex. Gen. Laws 939,
1133 (emphasis  added).   Because former insurance code articles 3.62
and 21.55 provided for the award of penalties as Adamages,@ not Ainterest,@ Dunn, Teate, and Marineau
are inapposite to the interpretation of property code section 28.004=s provision for the award of
interest.

For
the forgoing reasons, we hold that a contractor who is entitled to collect 18%
interest under the Act is not also entitled to common law prejudgment interest,
and we overrule AMX=s second issue.

III.             
AMX=s attorney=s fees








In
its third issue, AMX argues that the trial court erred by failing to award AMX
any attorney=s fees because AMX prevailed on its
breach of contract claim and submitted uncontroverted evidence of its attorney=s fees.  MRC responds that AMX failed to offer
credible evidence to support the fees of its in-house counsel or retained local
counsel, failed to prove the Acost plus overhead@ of using in-house counsel, failed to
prove that the services of local counsel were necessary, and failed to
segregate its attorney=s fees attributable to AMX=s breach of contract and Prompt
Payment Act claims.

A.              
Evidence
of AMX=s attorney=s fees

The
parties submitted the issue of attorney=s fees to the trial court after the jury trial.  AMX eventually filed five affidavits in
support of its attorney=s fees claim, three sworn by its
in-house counsel, David Kallus, and two sworn by its local counsel, Ed
Cox.  MRC did not file controverting
affidavits.








In
his first, sixteen-page affidavit, filed on February 5, 2007, Kallus recited
his education and work histories.  He
stated that more than fifty percent of his legal work was in Tarrant and Dallas
Counties in the preceding five years and that his Ahourly rate of $200.00 per hour is
considerably less than the prevailing market rate in Tarrant County for
attorneys with my experience, qualifications, skill, and ability, and the time
expended on this matter is reasonable.@  He stated that in his
opinion, all of the work performed was necessary and reasonable under the
circumstances of the case.  Kallus
averred that it was reasonable and necessary to hire local counsel to assist in
the preparation and trial of the case. 
Thirteen pages of his affidavit recite a blow-by-blow retellingCfrom Kallus=s perspectiveCof the discovery process and pretrial
motion practice.  Kallus concluded that
AMX had incurred reasonable and necessary attorney=s fees of $157,085.15 through
trial.  Kallus attached to his affidavit
sixteen pages of time entries reflecting work performed on the case through the
end of trial.  The time sheet does not
reflect dollar charges for each entry, but it recites a total of 646.83 hours
and an Aamount to be billed@ of $129,366.67, which works out to
$200.00 per hour.

In
his second, nine-page affidavit, filed on February 12, 2007, Kallus described
the claims, affirmative defenses, motions, and responses to motions MRC filed
during the litigation, averred that Athe issues raised by [AMX=s] claims for affirmative relief became inextricably
intertwined with the issues raised by [MRC=s] pleading,@ and faulted MRC for delaying the
trial and running up the legal fees. 

In
his third affidavitCa single page filed on February 22,
2007CKallus averred that he was in-house
counsel for AMX and received an annual salary (facts not disclosed in his prior
affidavits).  Kallus stated, AThe fair market value of legal
services provided by an attorney in the Dallas/Fort Worth Metroplex with my
experience, qualifications, credentials, and skill is between $300.00 and
$350.00 per hour.@








Cox=s first affidavit was filed on February
7, 2008.  He averred that Kallus retained
his firm as local counsel to assist with discovery and trial.  Cox stated that AKallus=s hourly rate of $200 per hour is reasonable and, in fact, is
below the market rate for an attorney of his experience, qualifications, and
skills in the Metroplex.@ 
He said that his own firm devoted 153.10 hours of work to this case,
worth $27,718.50, and that the services were necessary and the fees Aappropriate.@ 
Cox attached to his affidavit a time summary sheet showing work
performed by date and the time and charge for each task.

In
his second affidavit, dated February 22, 2007, Cox stated that if AMX had hired
outside counsel in the Metroplex with the same experience, qualifications, and
skills as Kallus, AAMX could reasonably be expected to
have been charged between $300 and $350 per hour.@  He further opined
that Aa reasonable attorney fee for the
work performed by Mr. Kallus as reflected in his time sheet . . . is
between $194,049.99 and $226,391.66.@[2]

B.               
The
trial court=s findings and conclusions

In
its findings of facts and conclusions of law, the trial court made the
following findings and conclusions regarding AMX=s attorney=s fees:

                                       FINDINGS
OF FACT

. . . . 

3.     [AMX] failed to prove by a preponderance of
the credible evidence  that attorney=s fees
were actually incurred in this case.

 








4.     [AMX] failed to prove by a preponderance of
the credible evidence that there was any attorney=s fee agreement between [AMX] and its lead counsel.

 

5.     [AMX] failed to prove by a preponderance of
the credible evidence that it was necessary or reasonable to incur attorney=s fees
for local counsel.     

 

6.     [AMX] failed to prove by a preponderance of
the credible evidence that the fees requested by [AMX] were reasonable.

 

7.     [AMX] failed to prove by a preponderance of
the credible evidence that fees requested by [AMX] were necessary.

 

8.     The fees requested by [AMX] were excessive.

 

9.     [AMX] failed to segregate the fees relating
to the single claim upon which it prevailed from the fees relating to the
numerous claims upon which it failed to prevail.

 

. . . .

 

                                    CONCLUSIONS OF LAW

 

. . . .

 

5.     [AMX=s] claim for attorney=s fees is excessive, unreasonable and without sufficient
evidentiary basis to support an award of attorney=s fees.

 

6.     [AMX=s] claim for attorney=s fees fails because [AMX] failed and refused to
segregate attorney=s fees incurred in connection with claims upon which
[AMX] prevailed from attorney=s fees incurred in connection with other claims.

 

7.     An award of attorney=s fees
to [AMX] would not be equitable or just.

 

8.     [AMX] is not entitled to
recover attorney=s fees.








C.              
Discussion

 

As
a general rule, attorney=s fees are not recoverable in Texas
unless allowed by contract or statute.  Brainard
v. Trinity Universal Ins. Co., 216 S.W.3d 809, 817 (Tex. 2006).  In this case, attorney=s fees are authorized by the contract
between AMX and MRC, which provides that A[i]n the event payment is not made as outlined herein, [MRC]
agrees to pay all costs of collection and attorney=s fees incurred by [AMX]; by the
Prompt Payment to Contractors Act, Tex. Prop. Code Ann. ' 28.005(b); and by civil practice and
remedies code section 38.001, which provides that A[a] person may recover reasonable
attorney=s fees . . . if the claim
is for . . . an oral or written contract.@ 
Tex. Civ. Prac. & Rem. Code Ann. ' 38.001 (Vernon 2008). 
We will focus our analysis on attorney=s fees under section 38.001.








An
award of reasonable attorney=s fees is mandatory under section
38.001 if there is proof of the reasonableness of the fees.  World Help v. Leisure Lifestyles, Inc.,
977 S.W.2d 662, 683 (Tex. App.CFort Worth 1998, pet. denied).  The amount of the award lies within the
discretion of the court, but it does not have the discretion to deny attorney=s fees if they are proper.  Hassell Constr. Co. v. Stature Commercial
Co., 162 S.W.3d 664, 668 (Tex. App.CHouston [14th Dist.] 2005, no pet.); see also Ulico Cas.
Co. v. Allied Pilots Assoc., 187 S.W.3d 91, 109B110 (Tex. App.CFort Worth 2005, no pet.) (AA trial court has discretion in
fixing the amount of attorney=s fees, but it has no discretion to
entirely deny attorney=s fees established under section
38.001.@), rev=d on other grounds, 262 S.W.3d 773 (Tex. 2008).  When a claim for attorney=s fees is based on chapter 38, it is
presumed that the usual and customary attorney=s fees are reasonable, although that presumption may be
rebutted.  Tex. Civ. Prac. & Rem.
Code Ann. ' 38.003 (Vernon 2008).








Factors
the trier of fact should consider in determining the amount of reasonable
attorney=s fees include the following: (1) the
time and labor required, the novelty and difficulty of the questions involved,
and the skill required to perform the legal service properly; (2) the
likelihood that the acceptance of the particular employment will preclude other
employment by the lawyer; (3) the fee customarily charged in the locality for
similar legal services; (4) the amount involved and the results obtained; (5)
the time limitations imposed by the client or by the circumstances; (6) the
nature and length of the professional relationship with the client; (7) the
experience, reputation, and ability of the lawyer or lawyers performing the
services; and (8) whether the fee is fixed or contingent on results obtained or
uncertainty of collection before the legal services have been rendered.  Arthur Andersen & Co. v. Perry Equip.
Corp., 945 S.W.2d 812, 818 (Tex. 1997) (quoting Tex. Disciplinary R. Prof=l Conduct 1.04, reprinted in Tex. Gov=t Code Ann., tit. 2, subtit. G app. A
(Vernon 2005) (Texas State Bar R. art. X, ' 9)).

1.               
In-house
counsel=s fees

a.                
Market
value versus cost-plus value

AMX
argues that in-house counsel=s fees should be calculated at the
market rate for outside counsel.  MRC
contends that in-house fees should be calculated under a Acost-plus@ method that determines the claimant=s actual cost of employing in-house
counsel.  Texas courts have written
surprisingly little about the recovery of in-house attorney=s fees.  The first district has held that a successful
claimant may recover attorney=s fees for the legal services of
in-house counsel.  Tesoro Petroleum
Corp. v. Coastal Ref. & Mktg., Inc., 754 S.W.2d 764, 766 (Tex. App.CHouston [1st Dist.] 1988, writ
denied) (holding claimant in contract dispute entitled to recover in-house
attorney=s fees equal to 10% of damages); see
also Beckstrom v. Gilmore, 886 S.W.2d 845, 847 (Tex. App.CEastland 1994, writ denied) (AAppellant cites no authority that
adds the requirement [to civil practice and remedies code section 38.002] that
the claimant must be represented by another person.  We decline to add such a requirement.@). 
But no Texas court has decided how to calculate in-house counsel=s fees on an hourly basis.








The
California supreme court considered the same question in PLCM Group v.
Drexler and held that in-house counsel=s fees should be calculated at market value.  997 P.2d 511, 520 (Cal. 2000).  PLCM, an administrator of legal malpractice
insurance policies, sued Drexler, an attorney, for reimbursement for funds
expended defending Drexler against a legal malpractice claim.  Id. at 514.  PLCM was represented by in-house counsel
employed by its parent company.  Id.  The trial court found in favor of PLCM and
awarded it attorney=s fees for the service of in-house
counsel calculated at the prevailing hourly market rate for attorneys of
comparable experience.  Id.








After
holding that PLCM could recover its in-house attorney=s fees, the California supreme court
held that the trial court properly calculated the fees based on their market
value, and it specifically rejected Drexler=s argument that the trial court erred Abecause it did not use a so‑called
cost‑plus approach, based on a precise calculation of the actual salary,
costs, and overhead of in‑house counsel.@  Id. at 517,
519.  The court reasoned that the
market-value and cost-plus methods may reflect many of the same factors because
Aprevailing market rates necessarily
take into consideration such factors as salaries, overhead, the costs of
support personnel, and incidental expenses.@  Id. at
520.  But it noted that the market value
approach has the virtue of being predictable for the parties and easy to
administer, while the cost‑plus approach, in addition to being
cumbersome, intrusive, and costly to apply, may distort the incentives for
settlement and reward inefficiency.  Id.








Courts
in other jurisdictions have likewise concluded that the market value method is
the appropriate method for calculating in-house counsel=s attorney=s fees.  See, e.g., Balkind v. Telluride Mountain
Title Co., 8 P.3d 581, 588 (Colo. App. 2000) (ASalaried and public interest
attorneys should be awarded attorney fees based on the prevailing market rate
rather than a >cost‑plus= approach focusing on the attorney=s salary.@); Cent. States, Se. & Sw.
Areas Pension Fund v. Cent. Cartage Co., 76 F.3d 114, 115B16 (7th Cir. 1996) (holding pension
fund represented by in-house counsel entitled to recover attorney=s fees at market value and rejecting
argument that awarding market-value fees to entity represented by in-house
counsel promoted fee-splitting with a nonlawyer because attorney=s fees awards always belong to the
litigant, not the lawyer, regardless of how the court calculates the fee);
Cottman Transmission Sys., Inc. v. Martino, Nos. CIV.A. 92‑7245,
CIV.A. 92‑2131, CIV.A. 92‑2253, 1993 WL 541680, at *15 (E.D. Pa.
Dec. 22, 1993) (AThe Third Circuit has indicated that
there is nothing improper about a market rate calculation for attorney fee
awards for salaried in house counsel.@), vacated on other grounds, 36 F.3d 291 (3rd Cir.
1994); Metro. Mortg. & Secs. Co., Inc. v. Becker, 825 P.2d 360, 364
& n.3 (Wash. App. 1992) (noting other courts= concerns over applying the market value approach and
identifying the cost-plus method as an alternative, but holding that the
starting point for making an award of attorney=s fees is the lodestar method and that the burden of
justifying a deviation from the lodestar amount is on the party proposing the
deviation); Milgard Tempering, Inc. v. Selas Corp of Am., 761 F.2d 553,
558 (9th Cir. 1985) (instructing district court on remand to examine the Amodern trend@ toward calculating fees based on the
market rate to predict Washington law); see also Blum v. Stenson, 465
U.S. 886, 892B94, 104 S. Ct. 1541, 1545B47 (1984) (holding nonprofit legal
aid organization that represented prevailing Civil Rights Act litigant was
entitled to recover attorney=s fees calculated under prevailing
market rate rather than cost-related basis, even if the fee so calculated
exceeded the salaries and expenses of staff counsel); Molano v. State,
262 S.W.3d 554, 557 & n.1 (Tex. App.CCorpus Christi 2008, no pet. h.) (affirming award of attorney=s fees  calculated under market value method to State
under DTPA for legal work performed by assistant attorney general).








Other
jurisdictions, on the other hand, have rejected the market value method in
favor of the cost-plus method.  See,
e.g., Softsolutions, Inc. v. Brigham Young Univ., 2000 UT 46, 1 P.3d
1095, 1107 (Utah 2000); PPG Indus., Inc. v. Celanese Polymer Specialties
Co., 840 F.2d 1565, 1570 (Fed. Cir. 1988) (noting in dicta that Ain this circuit reasonable rates for
in-house counsel may be calculated on cost plus overhead@); Dana Corp. v. Nok, Inc.,
No. 86‑CV‑74903‑DT, 1988 WL 156807, at *4 (E.D. Mich. 1988)
(same); see also In re Stewart, Nos. 00‑00046, 02‑10020,
2004 WL 3130573, at *16 (Bankr. D. D.C. Nov. 10, 2004) (holding contract
provision awarding attorney=s fees Aincurred@ by prevailing party precluded
application of market value method to calculate in-house counsel=s fees).

In
Softsolutions, Inc.Ccoincidentally handed down just
eleven days after the California supreme court=s PLCM opinionCthe Utah supreme court held, AWe are convinced that a cost‑plus rate is the more
reasonable measure of attorney fees to in‑house counsel, and is
consistent with the public policy that the basic purpose of attorney fees is to
indemnify the prevailing party and not to punish the losing party by allowing
the winner a windfall profit.@ 
1 P.3d at 1107.  But in another,
earlier case, the California court rejected a similar argument that the market
value method creates a windfall for a prevailing plaintiff and noted
that calculating fees at less than market value creates a windfall for the
losing defendant.  Serrano v.
Unruh, 652 P.2d 985, 999 (Cal. 1982).








We
are persuaded by the logic of those jurisdictions that apply the market value
method to calculate in-house counsel=s attorney=s fees.  The market value method has the virtue of
being predictable for the parties and easy to administer.  See PLCM Group, Inc., 997 P.2d at
520.  It prevents a losing defendant from
benefitting from the prevailing party=s decision to control its own costs by employing in-house
counsel.  See Serrano, 652 P.2d at
999.  Moreover, the market value method
is consistent with the factors Texas courts consider when assessing attorney=s fees, including the fee customarily
charged in the locality for similar legal services.  See Arthur Andersen & Co., 945
S.W.2d at 818.  We therefore hold that
the appropriate method by which to calculate in-house counsel=s attorney=s fees is the market value method.

b.               
Evidence
of in-house counsel=s fees

Having
determined that the market value method applies to the calculation of AMX=s in-house counsel=s attorney=s fees, we now turn to the record to
determine whether, as AMX argues, the trial court=s findings of fact are contrary to the great weight and
preponderance of the evidence.








Findings
of fact entered in a case tried to the court have the same force and dignity as
a jury=s answers to jury questions.  Andersen v. City of Seven Points, 806
S.W.2d 791, 794 (Tex. 1991).  The trial
court=s findings of fact are reviewable for
legal and factual sufficiency of the evidence to support them by the same
standards that are applied in reviewing evidence supporting a jury=s answer.  Ortiz v. Jones, 917 S.W.2d 770, 772
(Tex. 1996); Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994). When
reviewing an issue asserting that a finding is Aagainst the great weight and preponderance@ of the evidence, we must consider
and weigh all of the evidence and set aside the finding only if the evidence is
so weak or the finding is so contrary to the great weight and preponderance of
the evidence as to be clearly wrong and unjust. 
Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001); In
re King=s Estate, 150 Tex. 662, 244 S.W.2d 660, 661
(1951).  A court of appeals cannot make
original findings of fact; it can only Aunfind@ facts.  Tex. Nat=l Bank v. Karnes, 717 S.W.2d 901, 903 (Tex. 1986); Zeptner
v. Zeptner, 111 S.W.3d 727, 734 (Tex. App.CFort Worth 2003, no pet.) (op. on reh=g). 
Conclusions of law may not be challenged for factual sufficiency, but
they may be reviewed to determine their correctness based upon the facts.  Citizens Nat=l Bank v. City of Rhome, 201 S.W.3d 254, 256 (Tex. App.CFort Worth 2006, no pet.); Dominey
v. Unknown Heirs and Legal Representatives of Lokomski, 172 S.W.3d 67, 71
(Tex. App.CFort Worth 2005, no pet.).








Although
the uncontroverted testimony of an interested witness generally does nothing
more than create a fact issue, such testimony is taken as true as a matter of
law if it is not contradicted by any other witness or by attendant
circumstances and is clear, direct and positive, and free from contradiction,
inaccuracies, and circumstances tending to cast suspicion on it.  Ragsdale v. Progressive Voters League,
801 S.W.2d 880, 882 (Tex. 1990) (holding uncontroverted testimony of attorney=s fees conclusively established right
to recover fees as a matter of law and that trial court abused its discretion
by awarding only $150 in fees).  This
exception to the interested witness rule is especially true when the opposing
party has the means and opportunity of disproving the testimony if it is not
true and fails to do so.  Id.
(quoting Anchor Cas. Co. v. Bowers, 393 S.W.2d 168, 169B70 (Tex. 1965)).








The
only evidence before the trial court was Kallus=s and Cox=s affidavits.  With regard to the factors set out in Arthur
Andersen, Kallus=s affidavits and time records recited
the time and labor required to represent AMX, the fee customarily charged in
the locality for similar legal services, the amounts involved, Kallus=s experience and ability, and the
reasonableness and necessity of the fees. 
See Arthur Andersen & Co., 945 S.W.2d at 818.  Cox=s affidavits likewise identified the fees customarily charged
by an attorney of Kallus=s experience, qualifications, and
skills in the Metroplex.  Both Kallus and
Cox testified that the market value of Kallus=s time was $300 to $350 per hour.  This evidence was uncontroverted, and Kallus=s and Cox=s affidavit testimony was clear,
direct, positive, and free from inconsistency. 
See Ragsdale, 801 S.W.2d at 888. 
MRC had the opportunity and means to disprove or at least controvert
their testimony if the testimony was not true. 
See id.  It failed to do
so.  Thus, Kallus=s and Cox=s testimony established as a matter
of law the necessity of the legal work performed by Kallus, the market value
range  ($300 to $350 per hour) of his
services, and the reasonableness of fees requested by AMX.

We
now examine the trial court=s findings of fact in light of the
uncontroverted evidence.  The trial court
found that AMX failed to prove that its requested fees were reasonable and that
its requested fees were excessive.  But
Kallus=s uncontroverted testimony
establishes that the fees were both reasonable and necessary, and Kallus=s and Cox=s uncontroverted testimony establish
the market value of Kallus=s services.[3]  Therefore, these findings were contrary to
the great weight and preponderance of the evidence.  Likewise, the trial court=s conclusion of law that AMX=s claim for attorney=s fees is excessive, unreasonable,
and without sufficient evidentiary basis to support an award of attorney=s fees is incorrect in light of the
uncontroverted evidence.








The
trial court also found that AMX failed to prove the existence of an attorney=s fee agreement between it and Kallus
and that it actually incurred attorney=s fees.  The existence
of a fee contract and proof of fees actually incurred or paid are not
prerequisites to the recovery of attorney=s fees in Texas.  See,
e.g., Beckstrom, 886 S.W.2d at 847 (holding an attorney representing
himself pro se may recover attorney=s fees under Chapter 38 of the civil practice and remedies
code); Brown v. Comm=n for Lawyer Discipline, 980 S.W.2d 675, 683B84 (Tex. App.CSan Antonio 1998, no writ) (holding
state bar represented by private lawyers on a pro bono basis may recover
reasonable attorney=s fees); Tuberquia v. Jamison
& Harris, No. A14‑91‑00055‑CV, 1991 WL 260344, at *2
(Tex. App.CHouston [14th Dist] Dec. 12, 1991, no
writ) (not designated for publication) (holding law firm represented by one of
its own attorneys in suit to collect legal fees entitled to recover attorney
fees for the time and effort expended); see also Campbell, Athey
& Zukowski v. Thomasson, 863 F.2d 398, 400B01 (5th Cir. 1989) (applying Texas
law and holding law firm that sued client to collect unpaid legal fees and that
was represented by Aan attorney who also happened to be a
salaried member of the firm@ could recover attorney=s fees under Chapter 38, just as a
corporation may recover fees for in-house counsel); but see Simmons v.
Kuzmich, 166 S.W.3d 342, 350 (Tex. App.CFort Worth 2005, no pet.) (holding, without citing any
authority, that admission of attorney who was represented by his own law firm
that neither he nor anyone from his office was billing or incurring fees and
that he only Alost some time from the office@ precluded award of attorney=s fees).  Thus, the trial court=s findings that AMX failed to prove
the existence of a fee contract between itself and Kallus and the actual
incurrence of fees are irrelevant to AMX=s right to recover attorney=s fees. 








c.                
Segregation

Lastly,
the trial court found and concluded that AMX was not entitled to recover its
fees because it Afailed to segregate the fees relating
to the single claim upon which it prevailed from the fees relating to the
numerous claims upon which it failed to prevail.@

Parties
seeking attorney=s fees under Texas law Ahave always been required to
segregate fees between claims for which they are recoverable and claims for
which they are not.@ 
Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 311 (Tex.
2006).  The supreme court recognized an
exception to this rule in Stewart Title Guaranty Co. v. Sterling:
attorney=s fees need not be segregated when Athe fees rendered are in connection
with claims arising out of the same transaction and are so interrelated that
their prosecution or defense entails proof or denial of essentially the same
facts.@ 
822 S.W.2d 1, 11B12 (Tex. 1991).  But in Chapa, the supreme court held
that A[t]o the extent Sterling
suggested that a common set of underlying facts necessarily made all claims
arising therefrom >inseparable= and all legal fees recoverable, it
went too far@ and flooded the courts of appeals
with claims that recoverable and unrecoverable fees are inextricably
intertwined.  212 S.W.3d at 312.  The supreme court therefore held as follows:








Accordingly, we reaffirm the rule that if any attorney=s fees
relate solely to a claim for which such fees are unrecoverable, a claimant must
segregate recoverable from unrecoverable fees. Intertwined facts do not make
tort fees recoverable; it is only when discrete legal services advance both
a recoverable and unrecoverable claim that they are so intertwined that they
need not be segregated. We modify Sterling to that extent.

 

Id. at 313B14 (emphasis added). 
It may often be impossible to state as a matter of law the extent to
which certain claims can or cannot be segregated; the issue is more a mixed
question of law and fact for the jury, but 

[t]here may, of course, be some disputes about fees
that a trial or appellate court should decide as a matter of law.  For example, to prevail on a contract claim a
party must overcome any and all affirmative defenses (such as limitations,
res judicata, or prior material breach), and the opposing party who raises
them should not be allowed to suggest to the jury that overcoming those
defenses was unnecessary.

 

Id. at 313, 314 (emphasis added).  When segregation is required, a claimant=s failure to segregate fees does not
mean that the claimant cannot recover any fees; unsegregated attorney=s fees for the entire case are some
evidence of what the segregated amount should be, and remand is required to
calculate the segregated award.  Id.
at 314.








In
this case, the threshold question is whether AMX was required to segregate its
fees.  AMX=s original, first amended, and second amended petitions all
claimed breach of contract, violation of the Prompt Payment to Contractors Act,
and foreclosure of AMX=s constitutional mechanic=s lien.  As we have already noted, attorney=s fees are recoverable in connection
with breach of contract and Prompt Payment to Contractors Act claims.  To prevail on a claim to foreclose a
constitutional mechanic=s lien, a lienholder must prove the
performance of the labor and the existence of the debt.  San Antonio Credit Union v. O=Connor, 115 S.W.3d 82, 107B08 (Tex. App.BSan Antonio 2003, pet. denied)
(quoting Weimhold v. Hyde, 294 S.W. 899, 900 (Tex. Civ. App.CAmarillo 1927, no writ)).  A claim for breach of a contract for
improvements also requires proof of performance of labor and the existence of a
debt.  See Residential Dynamics, LLC
v. Loveless, 186 S.W.3d 192, 198 (Tex. App.CFort Worth 2006, no pet.) (listing elements).  A claim under the Prompt Payment to
Contractors Act likewise requires proof of properly performed work and a
failure to pay promptly.  Tex. Prop. Code
Ann. '' 28.002 B.005. 
Thus, the discrete legal services needed to advance and prove AMX=s constitutional lien claim were the
same services required to advance and prove the breach of contract and Prompt
Payment claims, and we hold as a matter of law that the claims are so
intertwined that they need not be segregated. 
See Chapa, 212 S.W.3d at 313B14.  Likewise, AMX was
not required to segregate its fees for overcoming MRC=s affirmative defenses to these
claims.  See id. at 314.








On
the other hand, in its third amended petition, filed a week before trial, AMX
asserted several additional claims for common-law conversion, violation of the
Texas Theft Liability Act,[4]
breach of fiduciary duty, misapplication of trust funds, imposition of a
constructive trust, foreclosure of its equitable lien,  and money had and received.  The trial court did not submit these causes
of action to the jury.  Therefore, AMX
may not recover attorney=s fees with regard to any of
them.  Because AMX did not segregate its
fees, we cannot determine from the record before us how much work Kallus
performed to advance these causes of action nor whether they are so intertwined
with the breach of contract and Prompt Payment Act claims that the fees need
not be segregated.  See id.








MRC
argues that because AMX did not segregate its fees after MRC objected to the failure
to segregate in the trial court, AMX is not entitled to recover any fees at
all, relying on a statement in Green International, Inc. v. Solis, 951
S.W.2d 384, 389 (Tex. 1997), that A[a] failure to segregate attorney=s fees in a case containing multiple
causes of action, only some of which entitle the recovery of attorney=s fees, can result in the recovery of
zero attorney=s fees.@  The court did not
explain the circumstances under which the failure to segregate would result in
a recovery of zero fees, see id., and the word Acan@ does not mean Awill@ or Amust.@ 
Moreover, Solis predates Chapa, where the supreme court
held that a claimant=s failure to segregate fees does not
mean that the claimant cannot recover any fees; unsegregated attorney=s fees for the entire case are some
evidence of what the segregated amount should be, and remand is required to
calculate the segregated award.  Chapa,
212 S.W.3d at 314.  We therefore remand
the issue of AMX=s in-house attorney=s fees to the trial court for a new
trial.

2.               
Local
counsel=s fees

Most
of the foregoing discussion applies to AMX=s local counsel=s fees, too.  The trial
court found, and MRC argues on appeal, that AMX failed to prove that local
counsel=s services were necessary because
Kallus testified that he had considerable experience litigating in Dallas and
Tarrant Counties.  But both Kallus and
Cox averred that local counsel=s services were necessary, and MRC
did not controvert his testimony.  We
therefore hold that the trial court=s finding that AMX failed to prove Athat it was necessary or reasonable
to incur attorney=s fees for local counsel@ is against the great weight and
preponderance of the evidence.  Because
the same segregation issue that requires a remand of Kallus=s fees to the trial court for a new
trial also applies to local counsel=s fees, we remand local counsel=s fees for a new trial.

We
sustain AMX=s third issue.








IV.            
Composite=s attorney=s fees

In
its fourth issue, AMX argues that the trial court erred by failing to assess
interpleader Composite Investments, Inc.=s attorney=s fees against MRC.

When
Composite purchased the hotel in 2004, MRC deposited $93,800Ctwice the amount of AMX=s lienCinto an escrow account for the benefit of the title insurance
company to facilitate the sale.  AMX
joined Composite as a defendant to enforce its lien, but later agreed to
dismiss its lien with prejudice in exchange for Composite=s depositing $93,800 into the trial
court registry.  MRC alleges that
Composite, which was not a party to the escrow contract, somehow induced the
title company to transfer the escrow funds to the registry by making false
representations (the nature of which MRC does not detail) and that Composite
had no right to interplead the escrow funds into the court=s registry.

After
depositing the funds in the registry, Composite requested $17,930.39 out of the
funds for its attorney=s fees incurred in the interpleader
proceeding.  The trial court carried the
request until after trial.  After trial,
MRC filed a brief in opposition to Composite=s request for attorney=s fees, arguing that Composite had no right to the impleaded
funds.  AMX moved for an order compelling
MRC to pay Composite=s attorney=s fees directly rather than out of
the registry funds.  In its final
judgment, the trial court ordered that $17,930.39 be released from the registry
to Composite for its attorney=s fees.













The
Texas rule is that the innocent stakeholder in an interpleader is entitled to
attorney=s fees, to be paid out of the
impleaded fund.  State Farm Life Ins.
Co. v. Martinez, 216 S.W.3d 799, 803 (Tex. 2007); U.S. v. Ray Thomas
Gravel Co., 380 S.W.2d 576, 581 (Tex. 1964).  AMX argues that the trial court should have
ordered MRC to pay Composite=s attorney=s fees directly, quoting this court=s opinion in Foreman v. Graham
for the proposition that Athe ultimate burden between rival
claimants should fall on the party whose unsuccessful claim rendered the
interpleader necessary.@ 
693 S.W.2d 774, 778 (Tex. App.CFort Worth 1985, writ ref=d n.r.e.).  We note
that AMX omitted the first half of the quoted sentence, which states, AAlthough the interpleader may be
entitled to have his attorney=s fees deducted from the implead[ed] fund, . . . .@ 
Id. (emphasis added) (citing Gen. Am. Life Ins. Co. v.
Rodriguez, 641 S.W.2d 264, 268 (Tex. App.CHouston [14th Dist.] 1982, no writ)).  Moreover, in Foreman, the impleaded
funds were $5,000, and the interpleader claimed $7,000 in attorney=s fees.  Id. 
We held that Athe trial court properly taxed [the
interpleader=s] attorney=s fees . . . against
appellant, the losing party, as costs rather than taking the entire sum of
attorney=s fees out of the fund and depleting
it entirely.@ 
Id.  Depletion is not a
factor in this case because the impleaded funds far exceed the attorney=s fees awarded to Composite.  Further, as MRC points out, MRC will bear the
ultimate burden of Composite=s fees because the money in the court
registry was MRC=s money to begin with.  We therefore hold that the trial court did
not err by awarding attorney=s fees to Composite out of the
impleaded funds, and we overrule AMX=s fourth issue.

V.              
Repayment
of funds to registry by MRC=s attorneys

In
its fifth issue, AMX asks this court to order MRC=s attorneys to pay back into the trial court=s registry $6,093.30 plus accrued
interest that the trial court ordered released to MRC=s attorney=s trust account.  The trial court released the funds in
response to MRC=s motion to release to it all of the
funds remaining in the registry after payment of Composite=s attorney=s fees.  In its order releasing $6,093.30 to MRC=s attorneys, the trial court also
ordered that the remaining $73,682.35 be retained in the court=s registry.  That sum approximates the total judgment
awarded to AMX plus interest as of the date of the trial court=s order.  MRC argues that it originally escrowed the
funds for the benefit of the title company, not AMX, and urges us to order the
funds released to MRC.[5]








AMX
cites Northshore Bank v. Commercial Credit Corp. for the proposition
that this court should order MRC=s counsel to repay the withdrawn funds to the registry.  668 S.W.2d 787, 790 (Tex. App.CHouston [14th Dist. 1984, writ ref=d n.r.e.).  In that case, the fourteenth court noted that
funds deposited in the registry of the trial court are subject to the control
and orders of the trial court and that the trial court in the exercise of its
equitable powers may make such orders that it deems necessary to protect said
funds.  Id.  The court held that upon reversal, the trial
court could have ordered the withdrawn funds returned to the registry or
enter judgment that the funds be recovered from the party wrongfully
withholding them.  Id.  Thus, Northshore does not stand for
the proposition that a court of appeals may order a party to return funds to
the trial court=s registry, and we find no case so
holding.  Moreover, Northshore
relegates to the discretion of the trial court the decision of whether to order
the funds repaid to the registry or to enter judgment for the funds against the
party holding them.  Id.  In this case, the trial court retained in the
registry an amount of money sufficient to pay the judgment it had rendered in
favor of AMX at the time.  We therefore
hold that AMX has failed to show that the trial court abused its discretion by
releasing the excess funds to MRC=s counsel, and we overrule AMX=s fifth issue.

VI.            
Release
of registry funds to AMX








In
its sixth issue, AMX urges this court to order the trial court to release the
registry funds to AMX.  AMX=s argument on this issue consists of
one short paragraph with no citations to any legal authority.  An issue unsupported by citation to any legal
authority presents nothing for the court to review.  Strange v. Cont=l Cas. Co., 126 S.W.3d 676, 678 (Tex. App.CDallas 2004, pet. denied), cert.
denied, 543 U.S. 1076 (2005); see also Tex. R. App. P. 38.1(i)
(providing that a brief must contain appropriate citations to
authorities).  We therefore overrule AMX=s sixth issue.

                                             Conclusion

Having
sustained AMX=s first and third issues and
overruled its second, fourth, fifth, and sixth issues, we reverse those
portions of the trial court=s judgment awarding AMX tolled
interest under the Prompt Payment to Contractors Act and denying AMX its
attorney=s fees; render judgment that AMX
recover from MRC $46,354.62 in interest under the Prompt Payment to Contractors
Act; and remand the issue of AMX=s reasonable and necessary attorney=s fees to the trial court for a new
trial.  In response to AMX=s motion for rehearing, we also
remand for further proceedings the disposition of the funds in the trial court=s registry; we deny all other relief
AMX requested in its motion for rehearing.

 

ANNE GARDNER

JUSTICE

 

PANEL:  GARDNER
and WALKER, JJ.

 

DELIVERED: 
April 9, 2009











[1]Tex. Prop. Code Ann. '' 28.001B.010 (Vernon 2000).





[2]The record also shows
that MRC=s counsel billed MRC at
least $120,000 in attorney=s fees between December 2003 and February 2007 at
the rate of $205.00 per hour.





[3]MRC argues that
notwithstanding the evidence, AMX=s fees are excessive because this was a simple
case and the amount of actual damages was never in dispute.  The clerk=s record contradicts this contention; it appears
from the pleadings and motions MRC filed in the trial court that MRC vigorously
resisted liability and asserted multiple defenses and affirmative claims for
relief.





[4]See Tex. Civ. Prac. &
Rem. Code Ann. ' 134.005(a)(1), (b)
(Vernon 2005).





[5]MRC did not file a
cross-appeal requesting this relief.  See
Tex. R. App. P. 25.1(c).